UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAMAHA ROBINSON                                    CIVIL ACTION

VERSUS                                             NO. 12-749

LOUISIANA STATE ET AL.                             SECTION "A" (2)


## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. It was recently reassigned to me. Record Doc. No. 8. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

# I.    FACTUAL AND PROCEDURAL BACKGROUND

On March 20, 2006, Robinson was charged by bill of information in the 32nd Judicial District Court for Terrebonne Parish with distribution of cocaine in violation of La. Rev. Stat. § 40:967A.[2]  He was tried before a jury on October 10 and 11, 2006. Robinson represented himself at trial, with an appointed indigent defender standing by throughout to provide whatever assistance Robinson might request.  Robinson was ultimately found guilty as charged.[3]  The Louisiana Court of Appeal of the Fifth Circuit subsequently summarized the facts of his case as follows:

> On September 15, 2005, Monica Boudreaux, an acquaintance of the defendant, contacted narcotics agents Alvin Tillman and Michelle Guilbeau of the Lafourche Parish Sheriff's Office.  Boudreaux explained she could obtain illegal drugs from defendant.  Agent Guilbeau met Boudreaux at the A-Bear Motel and took her back to the narcotics agents' office.  While at the office, Boudreaux called defendant from her cell phone and arranged to buy $140 worth of crack cocaine from him.  The call was broadcast on Boudreaux's speakerphone with both agents present.
>
> Boudreaux was searched prior to leaving with Agent Guilbeau.  No weapons, money, or drugs were found on her.  Boudreaux rode with Agent Guilbeau in an unmarked police unit used for undercover work.  Defendant directed them to meet him in the parking lot of the Half Moon Lounge, adjacent to the A-Bear Motel.  Agent Guilbeau parked her vehicle in the front portion of the parking lot.  Agent Tillman parked some distance away where he could observe the undercover operation.  Agent Tillman also monitored the situation through radio contact with Agent Guilbeau.
>
> Defendant pulled up and parked in front of Agent Guilbeau's vehicle.  Because he was unfamiliar with Agent Guilbeau, defendant was

_____

[2]State Rec. Vol. 1 of 1, Bill of Information, 3/20/06.

[3]Id., Trial Court Minutes, 10/11/06; Trial Transcript at p. 336.

reluctant to deal with her out of concern she was a law enforcement officer. Although the deal was for $140 worth of crack cocaine, Agent Guilbeau purposely provided Boudreaux with only $40 to obtain the drugs from defendant. Agents Guilbeau and Tillman both watched Boudreaux exit the undercover unit and approach the passenger side of defendant's Dodge Durango. Boudreaux leaned inside the passenger window and defendant reached over. Boudreaux returned to the undercover vehicle with crack cocaine and the money Agent Guilbeau had provided. Upon entering the undercover vehicle, Boudreaux turned the crack cocaine, which was loose and unpackaged, and the $40 over to Agent Guilbeau. Agent Guilbeau then exited the vehicle, walked over to defendant's vehicle, and opened the passenger door. Agent Guilbeau gave defendant the entire $140 and asked him whether he had any plastic baggies to hold the crack cocaine. Defendant replied he did not. Agent Guilbeau returned to her unit and secured the crack cocaine.FN Subsequent testing on the suspected crack cocaine revealed it weighed 1.5 grams and contained cocaine.

> FN The videotape of the transaction does not show the actual transfer, but the audio corroborates the testimony of the State's witnesses.[4]

On October 23, 2006, less than two weeks after his trial and conviction, Robinson filed in the state trial court a motion for a new trial and a motion for post-verdict judgment of acquittal, in which he argued that the evidence did not support the verdict.[5] The state trial court denied the motions on November 15, 2006.[6]

---

[4]Id., State v. Robinson, Case No. 2009-KA-713, at pp. 3-4 & n.4 (La. App. 5th Cir. 9/11/09) (unpublished opinion).

[5]Id., Motion for New Trial, 10/23/06; Motion [for] Post-Verdict Judgment of Acquittal, 10/23/06.

[6]Id., Transcript of Hearing, 11/15/06. The trial court orally denied both motions, ruling from the bench. Id. at p. 9.

In the meantime, an amended bill of information was filed on November 8, 2006, charging Robinson as an habitual offender.[7]  On December 4, 2006, Robinson appeared before the state trial court for sentencing.  As to his distribution of cocaine conviction, he was sentenced to ten (10) years in prison, the first two (2) years of which were to be served without benefit of probation, parole or suspension of sentence.[8]  Immediately thereafter on that same date, the court conducted Robinson's habitual offender proceedings.  Robinson plead guilty to the habitual offender bill, waived delays and was immediately re-sentenced as a habitual offender to fourteen (14) years in prison without benefit of probation or suspension of sentence.[9]  On December 11, 2006, he was sentenced on four separate counts of contempt of court for misconduct during his trial,[10] which are not the subject of the instant petition.

On August 16, 2007, Robinson signed and submitted an application for a writ of mandamus to the Louisiana First Circuit Court of Appeal, which was filed by that court on the following day.[11]  Robinson attached to his writ application a Uniform Application

---

[7]Id., Bill of Information Charging Habitual Offender, 11/8/06.

[8]Id., Transcript of Sentencing Hearing, 12/4/06 at p. 8.

[9]Id., Transcript of Habitual Offender Arraignment and Sentencing Hearing, 12/4/06 at pp. 5-7.

[10]Id., Transcript of Contempt of Court Hearing and Sentencing, 12/11/06 at p. 2.

[11]Id., Application for Writ of Mandamus, Case No. 2007-KW-1627, La. App. 5th Cir., filed 8/17/07.

for Post-Conviction Relief. He alleged that he had signed and submitted the post-conviction relief application to the state trial court on June 26, 2007, but the trial court had not ruled on it.[12] In his mandamus application, Robinson asserted a single claim for relief: that he had been denied his right to a direct appeal and should be afforded an out-of-time appeal. The First Circuit granted the writ "for the purpose of transferring the writ application to the district court for consideration as an application for post-conviction relief."[13] On March 7, 2008, the state trial court denied Robinson's post-conviction application as "premature because petitioner has not yet exercised his right to appeal" and granted Robinson an out-of-time appeal.[14]

On May 9, 2009, after extensions of time permitted by the court, Robinson's appointed counsel filed a direct appeal on his behalf in the Louisiana First Circuit, asserting a single claim of error that there had been insufficient evidence to support his conviction.[15] On July 9, 2009, Robinson received leave to file a pro se supplemental brief in support of his appeal,[16] in which he asserted two additional assignments of error: (1) He was deprived of the right to a fair trial because the trial court allowed inconsistent

---

[12] Id., Attachment.

[13] Id., La. App. 5th Cir. Order, 9/28/07, Case No. 2007-KW-1627.

[14] Id., 32nd JDC Order, 3/7/08, Case No. 464,820"E."

[15] Id., Defendant's Brief in Support of Appeal, 5/9/09, La. App. 5th Cir. Case No. 2009-KA-713.

[16] Id., Order, La. App. 5th Cir. Case No. 2009-KA-713, 7/9/09.

testimony of a confidential informant and a law enforcement agent to be introduced into evidence.  (2) He was deprived of the right to a fair trial because the confidential informant was permitted to testify against him at trial "in exchange for favorable consideration."[17]  On September 11, 2009, and in a clarifying order subsequently issued on October 1, 2009, the Louisiana First Circuit affirmed Robinson's conviction, habitual offender adjudication and sentence.[18]  On April 5, 2010, the Louisiana Supreme Court denied his related application for a writ of certiorari and/or review.[19]

Robinson's conviction and sentence became final 90 days later, on July 6, 2010,[20] when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

On August 3, 2010, Robinson filed a pro se Uniform Application for Post-Conviction Relief in the state trial court asserting two grounds for relief.[21]  In "Claim I"

---

[17]Pro Se Supplemental 5th Cir. Brief in Case No. 2009-KA-713 dated 8/8/09 at p. 2.

[18]Id., Orders of La. App. 5th Cir. in Case No. 2009-KA-713, 9/11/09 and 10/1/09.

[19]Id., Order of La. S. Ct., Case No. 2009-KO-2126, 4/5/10.

[20]Ninety days after April 5, 2010 fell on Sunday, July 4, 2010.  The following day was a national holiday.  The finality date was therefore extended to the next business day, Tuesday, July 6, 2010.

[21]Id., 32nd JDC Case No. 46482, Uniform Application for Post-Conviction Relief, 8/3/10.

on page 4 of the form, he asserted that his constitutional rights were violated at trial because, although all jurors answered "no" when asked during voir dire if they knew the State's witness Monica Boudreaux, one juror indicated when Boudreaux took the stand at trial that the juror in fact knew the witness.[22]  In "Claim II" on page 4 of the form, Robinson referred the court to the "accompanying memorandum in support," in which he argued that he had been permitted by the trial court to represent himself at trial without a knowing and intelligent waiver of his right to counsel.[23]

On August 27, 2010, the state trial court denied Robinson's application for post-conviction relief in a hand-written order that provided no reasons for denial of the first claim concerning the juror's knowledge of the witness.  The order addressed only the second claim and stated that, "[a]lthough defendant conducted his own defense[,] appointed counsel was present during the proceedings.  The issue of representation was not raised on appeal by appointed counsel."[24]

The intermediate state appellate court subsequently denied Robinson's timely related writ application on March 25, 2011, without stated reasons.[25]  The Louisiana

_____

[22]Id. at p. 4.

[23]Id.

[24]Id., 32nd JDC Order, 8/27/10.

[25]Id., La. App. 5th Cir. Order, Case. No. 2010-KW-2379, 3/25/11.

Supreme Court denied his timely subsequent application for supervisory and/or remedial writs on February 3, 2012.[26]

## II.   FEDERAL HABEAS PETITION

On March 19, 2012, the clerk of this court filed Robinson's petition for federal habeas corpus relief.  In his original petition, Robinson asserted a single claim for relief, i.e., that his decision to represent himself at trial and to waive his right to counsel was not made knowingly and intelligently.[27]  The State filed a response in opposition to Robinson's petition.[28]  Thereafter, I granted plaintiff's motion to supplement his petition to add a second claim, i.e., that his conviction was unconstitutionally obtained when the state trial court failed to dismiss a juror who "indicated that she knew" one of the trial witnesses.[29]  The State later filed a supplemental response to Robinson's supplemental petition.[30]

In its opposition memoranda, the State concedes that the petition is timely and that Robinson exhausted his state court proceedings as to his first claim only.[31]  The State

---

[26]Id., La. S. Ct. Order, Case No. 2011-KH-783, 2/3/12.

[27]Rec. Doc. No. 1 (Petition at ¶ 5(a), incorporating supporting memorandum).

[28]Rec. Doc. No. 5.

[29]Rec. Doc. Nos. 7, 10.

[30]Record Doc. No. 11.

[31]Rec. Doc. No. 5 at p. 6 of 10.

argues that Robinson's initial claim is without merit and relief should therefore be denied. As to his second claim asserted in his supplemental petition, the State asserts that Robinson failed to exhaust his state court remedies because "[t]his is the first time that Robinson has raised this claim."[32] Robinson responded with two written submissions, arguing that he included his supplemental claim concerning the juror's knowledge of the witness in his application for post-conviction relief, which was submitted to the state trial court on or about June 10, 2010.[33]

## III. GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA") comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[34] and applies to habeas corpus petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Robinson's petition, which, for

---

[32]Record Doc. No. 11 at p. 4 of 4.

[33]Record Doc. Nos. 12 and 13 at p. 12 of 15.

[34]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

reasons discussed in the footnote below, is deemed filed in this federal court on March 4, 2012.[35]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In this case, the State concedes, and I find, that the federal petition was timely filed. Both of Robinson's claims are exhausted and neither is in procedural default. Although the State argues that Robinson never raised in the state courts his supplemental claim concerning a juror's knowledge of a witness, the state court record is clear that Robinson asserted that issue as "Claim I" on page 4 of his 2010 post-conviction application in the state trial court, which he incorporated by reference into his subsequent writ applications to the Louisiana appellate courts. Although Robinson's pro se submissions did not brief this claim and the state courts did not expressly address it in

_____

[35]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials received the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Robinson's petition was filed by the clerk of this court on March 19, 2012, when he paid the filing fee. Robinson dated the signature on the memorandum in support of his petition on March 4, 2012, which is the earliest date when he could have delivered his pleadings to prison officials for mailing.

their perfunctory orders, Robinson provided the state courts with an adequate opportunity to do so. I find under these circumstances that this claim has adequately been exhausted.

IV.    STANDARDS OF A MERITS REVIEW

Title 28 U.S.C. Sections 2254(d)(1) and (d)(2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419, 418, 423 (citing 28 U.S.C. § 2254(d)(1)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir.

2000) (quoting <u>Miller v. Johnson</u>, 200 F.3d 274, 280-81 (5th Cir. 2000)), <u>aff'd in part,</u>

<u>rev'd in part on other grounds</u>, 532 U.S. 782 (2001); <u>Hill</u>, 210 F.3d at 485.

The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000); <u>accord</u> <u>Penry</u>, 532 U.S. at 792-93; <u>Hill</u>,

210 F.3d at 485. "'A federal habeas court may not issue the writ simply because that

court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'" <u>Price v. Vincent</u>, 538 U.S. 634, 641 (2003) (quoting

<u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002)) (citing <u>Bell v. Cone</u>, 535 U.S. 685,

699 (2002)) (brackets in original). Rather, under the "unreasonable application"

standard, "the only question for a federal habeas court is whether the state court's

determination is objectively unreasonable." <u>Neal v. Puckett</u>, 286 F.3d 230, 246 (5th Cir.

2002).

The burden is on the petitioner to show that the state court applied the precedent

to the facts of his case in an objectively unreasonable manner. <u>Price</u>, 538 U.S. at 641

(citing <u>Woodford</u>, 537 U.S. at 24-25); <u>Wright v. Quarterman</u>, 470 F.3d 581, 585 (5th Cir. 2006).  For the following reasons, Robinson has failed to bear his burden in this case.

V.    <u>WAIVER OF RIGHT TO COUNSEL</u>

Robinson alleges that he was erroneously permitted to represent himself at trial without a knowing and intelligent waiver of his right to counsel and without the state trial court having determined his competence to represent himself.  Robinson's claim presents this court with two related issues:  (a) whether the state trial court determined that he was competent to represent himself at trial and (b) whether Robinson knowingly waived his right to counsel.  In <u>Faretta v. California</u>, 422 U.S. 806, 835-36 (1975), the United States Supreme Court held that, while a criminal defendant has a constitutional right to represent himself at trial, he must be advised of the implications of his decision to represent himself, must demonstrate an unequivocal desire to do so and must knowingly and intelligently waive his right to counsel.

As to the first issue, the United States Supreme Court has made clear that "even assuming that self-representation might pose special trial-related difficulties, 'the competence that is required of a defendant to waive his right to counsel is the competence to <u>waive the right</u>, not the competence to represent himself.'"  <u>Indiana v. Edwards</u>, 554 U.S. 164, 172 (2008) (quoting <u>Godinez v. Moran</u>, 509 U.S. 389, 399

-13-

(1993)) (emphasis in original). The level of competence required to waive the right to counsel is the same as that required to stand trial. <u>Godinez</u>, 509 U.S. at 399.

The Supreme Court has repeatedly held that a defendant's "'technical legal knowledge' is 'not relevant' to the determination whether he is competent to waive his right to counsel." <u>Id.</u> at 400 (quoting <u>Faretta</u>, 422 U.S. at 836). The Court "emphasized that although the defendant 'may conduct his own defense ultimately to his own detriment, his choice must be honored.'" <u>Id.</u> (quoting <u>Faretta</u>, 422 U.S. at 834). Thus, Robinson's ability actually or effectively to act as his own lawyer was not a determinative factor in the state court's assessment of his competence to waive the right to counsel. "[A] criminal defendant's ability to represent himself has no bearing upon his competence to <u>choose</u> self-representation." <u>Id.</u> (emphasis in original).

Therefore, the state trial court was <u>not</u> constitutionally required to determine Robinson's competence to represent himself at trial, beyond the undisputed fact that he was competent to stand trial. Robinson's complaint that the trial judge told him, "you better learn real quick because you're going to be expected to follow the rules of court," when Robinson advised the court that he did not understand the Louisiana Rules of Evidence,[36] is of no constitutional moment. Supreme Court precedent is clear that Robinson's technical knowledge of the law is irrelevant to his choice of self-

---

[36]State Record Vol. 1 of 1, Trial Transcript at pp. 11-12.

representation. The state trial court's admonition was nothing more than the same kind of instruction that was approved by the Court in <u>Faretta</u> that an accused who chooses self-representation must "follow all the 'ground rules' of trial procedure." <u>Faretta</u>, 422 U.S. at 835-36. The state courts' denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court precedent.

As to the second issue, the question is whether Robinson knowingly and intelligently waived his right to counsel. In this case, the state court record is clear that, before the trial commenced, the trial judge conducted a hearing and determined that Robinson had affirmatively decided to forgo his right to counsel and was made aware of the dangers of self-representation. The state courts' finding that Robinson knowingly and intelligently waived his right to counsel and chose to represent himself is fully supported by the record and he is not entitled to relief on this claim, for the following reasons.

As discussed above, a criminal defendant has the constitutional right to waive his right to counsel and present his own defense. <u>Faretta</u>, 422 U.S. at 817-22; <u>United States v. Long</u>, 597 F.3d 720, 723 (5th Cir. 2010). Waiver of that right must be knowing and intelligent, and the defendant must clearly and unequivocally request self-representation. <u>Id.</u> Once a defendant unequivocally invokes the right of self-representation, whether expressly or constructively, the court must hold a <u>Faretta</u> hearing to ensure that the

defendant's request to proceed without counsel is knowing and voluntary.  <u>Faretta</u>, 422 U.S. at 835-36; <u>United States v. Cano</u>, 519 F.3d 512, 516 (2008).

The Supreme Court, however, has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." <u>Iowa v. Tovar</u>, 541 U.S. 77, 88 (2004).  The trial court need only be convinced that the defendant "knowingly and intelligently forgoes his right to counsel and that he is able and willing to abide by rules of procedure and courtroom protocol." <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 173 (1984).  The defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with his eyes open." <u>Faretta</u>, 422 U.S. at 835 (quotation omitted).

The trial judge may look at the particular facts and circumstances of a case, "including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding," to determine whether a defendant made a knowing and intelligent waiver of counsel.  <u>Tovar</u>, 541 U.S. at 88.  Furthermore, although a defendant possesses both the right to counsel and the right to self-representation, there is no constitutional right to have both through a "hybrid representation" scheme, such as standby counsel.  <u>McKaskle</u>, 465 U.S. at 183.

As mentioned previously, the level of competence required to waive the right to counsel is the same as that required to stand trial. <u>Godinez</u>, 509 U.S. at 399. Finally, whether a defendant expressly or constructively asserts an unequivocal request for self-representation is a factual determination. <u>Long</u>, 597 F.3d at 724-26; <u>Cano</u>, 519 F.3d at 516.

At a hearing held on October 10, 2006, shortly before the start of jury selection, the following colloquy occurred.

> MR. BEEBE: Jacques Beebe, IDB Conflict Counsel on behalf of the defendant, Jamah Robinson.
> THE COURT: All right, Mr. Robinson, I have been advised by your attorney, Mr. Beebe, that you do not want him to represent you. Is that true? Talk into the microphone.
> MR. ROBINSON: Yes, sir. Yes, sir.
> THE COURT: You want to represent yourself?
> MR. ROBINSON: Yes, sir.
> THE COURT: Why?
> MR. ROBINSON: <u>Because I feel like I could explain to the jury my point better, my point of view</u>.
> THE COURT: All right. First of all, do you understand that you have the right to have an attorney at all stages in the proceedings?
> MR. ROBINSON: Yes, sir.
> THE COURT: What is your educational background?
> MR. ROBINSON: Tenth grade.
> THE COURT: Did you ever obtain a GED?
> MR. ROBINSON: No, sir.
> THE COURT: Where were you in the tenth grade; what school?
> MR. ROBINSON: Lafourche Parish.
> THE COURT: What school?
> MR. ROBINSON: Thibodaux High.
> THE COURT: What is your age?
> MR. ROBINSON: Twenty years old.

THE COURT: What do you do for a living.

MR. ROBINSON: Nothing.

THE COURT: No, but when you're not in jail.

MR. ROBINSON: Nothing.

THE COURT: What do you mean, nothing?

MR. ROBINSON: Nothing.

THE COURT: You don't work; you never worked?

MR. ROBINSON: Yes, I was a carpenter helper for my uncle.

THE COURT: You're disabled?

MR. ROBINSON: No, sir.

THE COURT: Why don't you work?

MR. ROBINSON: I just became an adult.

THE COURT: Are you independently wealthy?

MR. ROBINSON: No.

THE COURT: Are you paying Mr. Beebe?

MR. ROBINSON: No, sir.

THE COURT: He's a free lawyer?

MR. ROBINSON: Yes, sir.

THE COURT: All right. So you don't have to pay him anything?

MR. ROBINSON: No, sir.

THE COURT: So what kind of work – have you ever done anything?

MR. ROBINSON: Carpenter helper.

THE COURT: Are you able to read?

MR. ROBINSON: Yes, sir.

THE COURT: And write?

MR. ROBINSON: Yes, sir.

THE COURT: And speak the English language?

MR. ROBINSON: Yes, sir.

THE COURT: Have you in [sic] read some documents to prepare for your trial?

MR. ROBINSON: No, sir.

THE COURT: No. I see you have a bunch of papers right there. You didn't read those papers?

MR. ROBINSON: Yes, sir.

THE COURT: No?

MR. ROBINSON: Yes, sir.

THE COURT: Yes or no.

MR. ROBINSON: Yes, sir.

THE COURT: So you know how to read?

MR. ROBINSON: Yes, sir.

THE COURT: I am going to have Mr. Beebe stay on as your attorney or as your consultant, as your attorney or as your legal adviser, at all stages in the proceedings. He will be at your side at every part of this trial. Okay?

MR. ROBINSON: <u>Yes, sir.</u>

THE COURT: You will not go forward without it being shown that you have had the benefit of having Mr. Beebe as your lawyer so that you can consult with him and you can ask him questions. Okay?

MR. ROBINSON: What you mean by that; I can't ask my own questions?

THE COURT: Yes, if you want to, you can.

MR. ROBINSON: All right.

THE COURT: But Mr. Beebe will be available to you.

MR. ROBINSON: Yes, sir.

THE COURT: All right. Now, you have the right to have a trial by jury, or you could waive that right, you can have a trial by a judge. Do you understand that?

MR. ROBINSON: Yes, sir.

THE COURT: What is your choice.

MR. ROBINSON: Jury.

THE COURT: I'm sorry.

MR. ROBINSON: A jury.

THE COURT: All right. You do understand that you could say no jury and just a judge; you understand that?

MR. ROBINSON: Yes, sir.

THE COURT: Do you know how many members of the jury there will be?

MR. ROBINSON: Twelve.

THE COURT: Very good. And we'll pick an alternate or two. You know what that means?

MR. ROBINSON: No, sir.

THE COURT: That means that we're going to pick an extra one or two jurors just in case one of the jurors gets sick and can't fulfill their requirements towards the end. Okay?

MR. ROBINSON: Yes, sir.

THE COURT: Now, I an not going to advise you as to the law in this case. That's not my obligation. I am not your lawyer, okay?

MR. ROBINSON: Yes, sir.

THE COURT: And I'm expecting you to proceed just as if you were a lawyer with the Rules of Evidence that the State of Louisiana requires all attorneys to abide by. Do you understand that?

MR. ROBINSON: No, sir.

THE COURT: You don't understand that?

MR. ROBINSON: No, sir.

THE COURT: Well, you better learn real quick because you're going to be expected to follow the rules of court. Do you understand that?

MR. ROBINSON: Yes, sir.

THE COURT: Now, I'm going to have Mr. Beebe in here so that he can step in for you at such time as you tell me you want him to. But to be fair to Mr. Beebe, you're going to have to put me on notice that you want Mr. Beebe to jump in for you. Do you understand what I'm saying?

MR. ROBINSON: Yes, sir.

THE COURT: All right. Because it would not be fair to Mr. Beebe if you just all of a sudden at your whim decided that you want him to ask the next question, for example. That wouldn't be fair. And I'm not going to allow that to happen. Do you understand?

MR. ROBINSON: Yes, sir.

THE COURT: And I expect your conduct to be one commensurate with an attorney. You understand that?

MR. ROBINSON: Yes, sir.

THE COURT: All right. Are you prepared to proceed in this case?

MR. ROBINSON: Yes, sir.

THE COURT: You want to commence this jury selection process?

MR. ROBINSON: Yes, sir.

THE COURT: Well, then, I'll allow you to sit at the table, and Mr. Beebe, you will be allowed to remain in the courtroom, be ordered to remain in the courtroom, in fact. You can sit in the audience; you can sit near Mr. Robinson. Mr. Robinson, I want to make sure again we are clear, you do not want the help of Mr. Beebe, am I right on that?

MR. ROBINSON: I need help but I got a lot of questions I want to ask myself.

THE COURT: You have a lot of questions you want to ask your what?

MR. ROBINSON: I got a lot of questions I want to ask.

THE COURT: All right.

MR. ROBINSON: I'm saying, hey, I could use him to represent me, but you know what I'm saying, my life is –

THE COURT: No, I don't know what you're saying, that's why I'm asking you.

MR. ROBINSON: I'm telling you right now, my life is – you know what I'm saying –

THE COURT: No, I don't know what you're saying; that's why I need you to say what you –

MR. ROBINSON: I have a lot of questions to ask myself.

THE COURT: You want to ask some questions to yourself?

MR. ROBINSON: No, ask some questions myself to the –

THE COURT: Well, you can ask any questions you want to yourself; we don't know the –

MR. ROBINSON: the CI and the agent.

THE COURT: I'm sorry.

MR. ROBINSON: I got a lot of questions I want to ask the CI and the agent.

THE COURT: Okay, all right. Are you prepared to proceed?

MR. ROBINSON: Yes, sir.

THE COURT: Well, then, let's commence the jury selection process.

MR. BEEBE: Your Honor, before you do that, I'd like the record to reflect that I have attempted to meet with Mr. Robinson at the Terrebonne Parish Criminal Justice Complex on two occasions. He first advised me on September the 29th of this year that he wanted to represent himself in this matter. I brought a pretrial plea offer to him, which he refused to consider. I advised him that the pretrial offer was in his best interest. <u>I have also advised him that it is better to proceed with an attorney in this matter, and he has chosen, of his own volition, to represent himself in this matter.</u>

THE COURT: Thank you. <u>Mr. Robinson, anything to add to or subtract from that?</u>

MR. ROBINSON: <u>No, sir.</u>

THE COURT: <u>You agree with what Mr. Beebe just said.</u>

MR. ROBINSON: <u>Yes, sir.</u>

THE COURT: Now is your chance to tell me.

MR. ROBINSON: Tell you what? I have nothing to say.

THE COURT: Never mind.

MR. ROBINSON: <u>I'm all right.</u>

THE COURT: Okay. Let's go ahead and commence the jury selection process.[37]

As determined by the state courts, the record establishes that Robinson was competent to proceed to trial and therefore competent to waive his right to counsel. The trial court discussed and considered Robinson's education and his mental state before accepting the waiver. Robinson was admonished on several occasions that he would be expected to follow the applicable rules of procedure and evidence. Robinson's statements to the court at each hearing reflected that he had sufficient knowledge to make his arguments known to the court and the jury. Robinson clearly expressed that he was not opposed to assistance from standby counsel and made plain his desire to ask his own questions and make his own arguments in his case.

The portion of the trial transcript attached by Robinson to his written submissions does not reflect the only time during the trial when the state trial judge addressed Robinson's waiver of his right to counsel and his decision to represent himself during the trial. Read as a whole, the trial transcript reflects that the state trial judge addressed this issue with Robinson on at least five (5) separate occasions during the two days of trial.[38] On each occasion, Robinson clearly reiterated his desire to represent himself. Nevertheless, the trial judge required his appointed counsel to remain by Robinson's

---

[37]State Record Vol. 1 of 1, Trial Transcript at pp. 5-15 (emphasis added).

[38]Id., Trial Transcript at pp. 5-15, 86-87, 214, 219-20, 264, 302-06.

side, to be available in the event Robinson at any time changed his mind or desired to consult with counsel about any part of the trial proceedings.

The state trial judge's attention to this issue was constant and in-depth. For example, when the issue was first raised before voir dire commenced, after insuring that Robinson clearly desired to represent himself, the trial judge made sure that Robinson understood his right to counsel. The judge satisfied himself concerning Robinson's education, ability to read and write, and that Robinson was prepared to proceed. The judge heard an oral statement on the record from Robinson's appointed counsel that the attorney had communicated the prosecution's offer of a plea agreement to Robinson, had recommended the proposed plea deal to Robinson and had advised Robinson that it was better for him to proceed with the assistance of counsel.[39] At the beginning of the second day of trial, after again determining that Robinson wanted to represent himself, the court reminded Robinson of both his right to the assistance of counsel and his right not to incriminate himself, including during his opening statement and questioning of the witnesses.[40] At the conclusion of the State's case-in-chief, the court specifically advised Robinson of his right to call witnesses as part of his defense.[41]

---

[39]Id. at pp. 5-16.

[40]Id. at pp. 214, 219-20.

[41]Id. at pp. 302, 304-05, 307.

I find that the trial transcript clearly and repeatedly demonstrates that Robinson knowingly and voluntarily waived his right to counsel and intelligently and deliberately decided to represent himself.  The trial court made every effort to protect Robinson by requiring his appointed counsel to stand by to assist him during trial and by frequently providing Robinson with the opportunity to change his mind and obtain the assistance of counsel, but Robinson persisted in his decision to represent himself.

The record is clear that the trial court was convinced that Robinson knowingly and intelligently waived his right to counsel and that he desired and was able to represent himself.  This is all that was required to meet constitutional standards regarding the waiver.  McKaskle, 465 U.S. at 173.  The considerations and warnings by the state trial court were sufficient to satisfy the Faretta requirements.  Smith v. Dretke, No. 05-CV-1229, 2006 WL 1951161, at *4 (N.D. Tex. July 13, 2006) (citing Tovar, 541 U.S. at 79; United States v. Fulton, 131 F. App'x 441, 442-43 (5th Cir. 2005); Dunn v. Johnson, 162 F.3d 302, 307 (5th Cir. 1998)).

Thus, the record supports the factual determinations made by the state courts that Robinson made a free and voluntary waiver of his right to counsel and the clear and unequivocal choice to represent himself.  Under these circumstances, the state courts' determinations in connection with Robinson's waiver of counsel and decision to

represent himself were not an unreasonable application of federal constitutional law. Robinson is not entitled to federal habeas corpus relief on this claim.

## VI.    JUROR'S KNOWLEDGE OF A WITNESS

All jurors were allowed to remain on the jury after it was discovered that one juror knew a witness for the State.  Robinson argues that the state trial court erred in allowing that juror to remain on the jury knowing that, during voir dire, the juror did not answer "honestly" the court's questions concerning whether any juror knew the witnesses.

The Due Process Clause guarantees an accused the right to an impartial jury that will determine guilt based on the evidence and the law as instructed, rather than on preconceived notions or extraneous information.  Morgan v. Illinois, 504 U.S. 719, 726-27 (1992); Patton v. Yount, 467 U.S. 1025, 1037 & n.12 (1984).  To prevail on a claim of denial of due process because of a contaminated jury panel, the petitioner bears the burden of demonstrating prejudice by establishing the actual existence of an opinion that will raise a presumption of partiality in the jurors' minds.  Murphy v. Florida, 421 U.S. 794, 800 (1975); Chavez v. Cockrell, 310 F.3d 805, 811 (5th Cir. 2002).  Due process also requires the trial court to "determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial."  Remmer v. United States, 347 U.S. 227, 230 (1954).

A trial judge should normally undertake assessment of prejudicial impact by questioning jurors directly, with the participation and input of counsel. Smith v. Phillips, 455 U.S. 209, 217 (1982). The trial court must assess "whether the prospective 'juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" Soria v. Johnson, 207 F.3d 232, 242 (5th Cir. 2000) (quoting Wainwright v. Witt, 469 U.S. 412, 424 (1985)). The petitioner must show that "'an incompetent juror is forced upon him.'" Williams v. Cockrell, 46 F. App'x 227, 2002 WL 1940099, at *5-6 (5th Cir. July 25, 2002) (quoting United States v. Webster, 162 F.3d 308, 342 n.36 (5th Cir. 1999)).

Whether a juror was impartial "is a question of federal law" and whether a juror can "lay aside his opinion and render a verdict based on the evidence presented in court . . . is a determination to which habeas courts owe special deference." Patton, 467 U.S. at 1037 n.12. The state trial court's "finding of impartiality is therefore 'presumed correct' unless it is 'not fairly supported' by the record viewed 'as a whole.'" Jones v. Butler, 864 F.2d 348, 362 (5th Cir. 1988) (quoting former 28 U.S.C. § 2254(d)(8)); see Lindh, 521 U.S. at 332 (AEDPA "eliminated" former 28 U.S.C. § 2254(d) and replaced it with "new" 28 U.S.C. §2254(d) and (e)); Fields v. Thaler, 588 F.3d 270, 279 (5th Cir. 2009) (citing Pondexter v. Dretke, 346 F.3d 142, 149 n.9 (5th Cir. 2003) ("Although a lack of fair support in the record was sufficient to rebut a presumptively correct factual

finding under pre-AEDPA law, the AEDPA increased the level of deference due to a state court's factual findings."); id. at 279 (quoting Lambert v. Blackwell, 387 F.3d 210, 235 (3d Cir. 2004) (internal quotation and citations omitted) (Section "2254(d)(2)'s reasonableness determination turns on a consideration of the totality of the evidence presented in the state-court proceeding"); but see Alexander v. Cockrell, 294 F.3d 626, 630 (5th Cir. 2002) (citing Demosthenes v. Baal, 495 U.S. 731, 735 (1990)) (stating, in a post-AEDPA case, that federal habeas courts "are required to accord a presumption of correctness to state court findings of fact, unless they lack fair support in the record").

In discussing the AEDPA deferential standard of review in the context of a claim of jury bias, the United States Court of Appeals for the Fifth Circuit has stated:

> Juror bias vel non is a finding of fact. Pursuant to AEDPA, "a determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1) (emphasis added). Accordingly, . . . to succeed on his juror-bias claim, [petitioner] must show "the adjudication of the claim [on the merits in a State court proceeding] . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2) (emphasis added).

White v. Quarterman, 275 F. App'x 380, 381 (5th Cir. 2008) (citing Patton, 467 U.S. at 1036; Virgil v. Dretke, 446 F.3d 598, 610 n.52 (5th Cir. 2006)) (second ellipsis in original).

Additionally, the United States Supreme Court has made clear that "deference must be paid to the trial judge who sees and hears the juror." <u>Wainwright</u>, 469 U.S. at 426. The habeas petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Applying the foregoing standards, I find that Robinson has not met his burden and that the state courts' rejection of his jury bias claim is not an unreasonable application of Supreme Court precedent. Robinson's claims that his jury was biased by a single juror's distant and limited knowledge of a witness for the State are meritless and do not support federal habeas relief. On the contrary, the state courts' determination of the jury bias claim was entirely consistent with federal constitutional law.

The trial transcript reflects that when the prosecutor was initially asked by the trial judge during voir dire to identify for prospective jurors all witnesses who might be called to testify during the trial, he twice failed to identify Monica Boudreaux, the confidential informant who participated with an undercover narcotics agent in the subject cocaine transaction involving Robinson.[42] After the jury was selected, preliminarily instructed and excused for the day with directions to return for the start of trial on the next day, it

_____

[42]State Rec. Vol. 1 of 1, Trial Transcript at pp. 34-35, 137.

was Robinson who asked the court why the prosecutor had failed to identify Monica

Boudreaux as a potential witness during voir dire.[43]

At the beginning of the second day of trial, before opening statements and before

the jury was brought into the courtroom, the prosecutor corrected his mistake:

> THE COURT: Are there any preliminary matters that we need to take care
> of before we bring the jury in this morning?
> MR. LUKE: Yes, Your Honor, there is one. We did a may call list
> yesterday, and there was one name that was left off in reference to it, and
> again, it is a may call. I don't know if I'm going to use this person or
> not. What I need to do is determine whether or not any of these jurors
> know that person.
> THE COURT: Sure.
> MR. LUKE: And if there is any prejudice in reference to it, then the Court
> can get up here and make a determination.
> THE COURT: All right.
> MR. LUKE: If they don't know them, it shouldn't be a problem. If they do
> know them, then we'll have to address the issue this morning.
> THE COURT: Okay, What we'll do, when we bring the jury in after we
> call roll, I'll say that Mr. Luke has advised there may be another witness,
> announce that name, then we'll ask the appropriate questions.
> MR. LUKE: Okay.
> THE COURT: Then we'll voir dire.
> MR. LUKE: Well, and we can see whether or not, then we have them step
> out, then I guess we need to talk about what we need to do from that point
> forward.
> THE COURT: If there is a problem.
> MR. LUKE: Yes, if there is a problem.
> THE COURT: Right, okay.
> * * *
> THE COURT: Do you have any questions of the Court?

---

[43]Id. at pp. 211-13.

MR. ROBINSON:  Yes.  Yes, about what Mr. Luke said, he might another witness.

THE COURT: Yes, sir.

MR. ROBINSON: I don't understand.

THE COURT: Well, what he's saying is that he made a mistake yesterday when I asked both of y'all to give me the names of witnesses who y'all might call.

MR. ROBINSON: Yes.

THE COURT: Mr. Luke told me just now he forgot to list one.  That's nothing uncommon.  So we're going to ask the jurors today if they know that witness.  Okay.  And if they do we'll deal with it.  All right.  That's what he's saying.  Any other questions, Mr. Robinson?

MR. ROBINSON: No, sir.

THE COURT: Okay, Mr. Luke, Mr. Robinson, y'all ready for the jury to be brought back into the courtroom?

MR. LUKE: Yes, Your Honor.

THE COURT: Let's go ahead and bring the jurors in . . . .  Good morning once again, ladies and gentlemen.  The Assistant District Attorney advised me this morning that through an oversight he neglected to list one of the may call witnesses, so I'm going to ask him at this time to announce the name of the witness who he may call since he neglected to do so yesterday.  Of course, I'm going to ask y'all if you know this person.  Mr. Luke.

MR. LUKE: And again, Your Honor, this is a possibility we may call a Monica Boudreaux.

THE COURT: Monica Boudreaux.  Does anybody know Monica Boudreaux?  If so, raise your hand.  No hands have gone up.  That disposes with that issue.[44]

Later that same day, however, during the trial itself, the following occurred when

Boudreaux was called to the stand to testify:

THE COURT: . . . .  Mr. Luke, call your next witness.

MR. LUKE [Assistant District Attorney]: Monica Boudreaux.

THE COURT: Please summon Monica Boudreaux to the courtroom.

---

[44]Id., Trial Transcript at pp. 215-16, 221-23.

MR. ROBINSON: Approach the bench.

(OFF RECORD BENCH CONFERENCE)

MINUTE CLERK: Judge, one of the jurors has her hand up.

THE COURT: Yes.

THE JUROR MRS. WASHINGTON: Before you called your witness, and everything, until she sat over here, and he asked for Monica Boudreaux, I really didn't know it was this Monica Boudreaux, but I know her but not personally.

THE COURT: How about we do this. Let's voir dire you separately. Everybody else take a little break. We'll ask you a few questions. How's that. That happens all the time so don't worry about that.

(REPORTER'S NOTE: The jury exited the courtroom.)

THE COURT ADDRESSING MRS. WASHINGTON:

Q.    The witness that came into the courtroom, in other words, you may know her?

A.    Yes, sir.

THE COURT: And the witness'[s] name is?

MR. LUKE: Monica Boudreaux, Your Honor.


THE COURT ADDRESSING MRS. WASHINGTON:

Q.    Monica Boudreaux. How do you think you know her?

A.    My parents adopted her son. He was in foster care and they adopted him. He got into foster care when he was two months old, and I haven't seen her in years.

Q.    So how you just discovered –

A.    I just – when she was sitting there. We didn't know if she was dead or alive, or if she was still in the state, because we haven't seen her and he doesn't have any contact with her either.

Q.    Do you think you would give her testimony any more weight, or credibility, or disbelievability merely because you may know her?

A.    No, sir.

Q.    Do you think you could be fair and impartial to both sides in this case?

A.    Yes, sir. I just wanted to be honest.

Q.    Sure, and I appreciate you telling us that. The state has a right to have an impartial and fair juror, and the defendant does, too. Do you think you could can [sic] give both sides a fair shake?

A.    Yes, sir.

-31-

THE COURT: Mr. Luke, voir dire questions, if any.

MR. LUKE: None, Your Honor.

THE COURT: I'm going to ask Mr. Robinson if he has any questions.

MR. ROBINSON: I have a question.

THE COURT: Sure.

MR. ROBINSON: That was one of my questions, because I know her personally.

THE COURT: Do you know her?

MR. ROBINSON: No, I'm talking about Monica.

THE COURT: You know the witness.

MR. ROBINSON: Yes.

THE COURT: Well, that's okay. It's all right if you know the witness.

MR. ROBINSON: I'm just making sure that what she said don't mess up none of my questions.

THE COURT: You mean the witness?

MR. ROBINSON: What she just said don't mess up my questions, because I already had that in mind for some of my questions.

THE COURT: You will be able to question the witness. If Mr. Luke calls this witness you have the right to cross-examination. What I want to know is do you have any questions of this juror right now.

MR. ROBINSON: No, sir.

THE COURT: Okay. You cool with her?

MR. ROBINSON: Yes, sir.

THE COURT: No problem, okay. Take a little break.

MRS. WASHINGTON: I just wanted to be honest.

THE COURT: Thank you for telling us that.[45]

As the foregoing exchange makes clear, the juror did not make the connection between the name Monica Boudreaux and the witness until the juror saw the witness in the courtroom. The juror immediately alerted the court. It was clear from the juror's individual voir dire at that time that the juror had no personal relationship with the witness; did not know the witness, except in passing as the biological mother of her

---

[45]Id. at pp. 260-63.

parents' adopted son; had not seen the witness "in years"; and did not even know whether the witness was dead or alive, or was still in the state. The juror made it clear that her parents' adopted child "doesn't have any contact with her [the witness] either." Significantly, in response to the trial judge's questions, the juror clearly stated that her limited knowledge of the identity of the witness would have <u>no</u> effect on the weight or credibility the juror would assign to the witness and that she was certain she could be fair and impartial and "give both sides a fair shake." Robinson then told the court that he had no questions of the juror and clearly responded, "yes, sir," when asked if he was "cool with" the juror.

Under these circumstances, the juror's limited knowledge of the witness did not affect her ability to serve as a fair and impartial juror. When the juror's knowledge of the witness became known, the court took appropriate and thorough measures to insure that the juror was in fact impartial. The juror was thoroughly questioned, and Robinson was provided an opportunity to question her himself. When the juror's individualized voir dire was completed, Robinson indicated no desire to strike her from the jury, and no grounds to do so existed.

In <u>White v. Quarterman</u>, the state district court had determined that the petitioner's post-conviction claim of jury bias was without merit because he had failed to satisfy his burden of proof. Thereafter, the Texas Court of Criminal Appeals rejected the claim

without assigning reasons.  <u>White</u>, 275 F. App'x at 381.  The Fifth Circuit stated that it could "assume the state [trial] court applied the proper law and then determine whether [the state court's] decision was contrary to or an objectively unreasonable application of that law."  <u>Id.</u> at 381 (quotation omitted).  Based on the state high court's rejection of White's jury bias claim without written reasons, the Fifth Circuit stated that the state court had necessarily concluded that the petitioner had failed to prove that the juror in question was biased and that the high court's "implied factual finding is entitled to deference."  <u>Id.</u> (citing 28 U.S.C. § 2254(d)(2), (e)(1); <u>Valdez v. Cockrell</u>, 274 F.3d 941, 948 n.11 (5th Cir. 2001)).  Thus, to attain federal habeas relief, "[the petitioner] must rebut these state-court factual findings by clear and convincing evidence."  <u>Id.</u> (citing 28 U.S.C. § 2254(e)(1)).

In determining whether the petitioner in <u>White</u> had satisfied his heavy burden of proof, the Fifth Circuit examined cases in which jury bias had been found.  In <u>Virgil</u>, 446 F.3d at 604, a juror was asked whether he could be "fair and impartial."  The juror said "no."  <u>White</u>, 275 F. App'x at 382.  In determining that the juror had admitted bias, the Fifth Circuit "focused on the phrase 'fair and impartial,' stating:  '[The juror's] unchallenged statements during voir dire that [he] could not be fair and impartial obligated Virgil's counsel to use a peremptory or for-cause challenge.'"  <u>Id.</u> at 382-83 (quoting <u>Virgil</u>, 446 F.3d at 610).  Similarly, in <u>United States v. Nell</u>, 526 F.2d 1223 (5th

Cir. 1976), the challenged juror <u>twice</u> stated that he disliked unions, explaining that his

second statement "just reiterates my <u>prejudice</u>." <u>Id.</u> at 1228 (emphasis added). In

determining that the juror was biased and that the trial court erred in not dismissing him

for cause, the court "focused on the juror's use of 'prejudice,' concluding: '[The juror's]

articulated responses left no doubt as to his prejudice.'" <u>White</u>, 275 F. App'x at 383

(quoting <u>Nell</u>, 526 F.2d at 1230).

In the instant case, as in <u>White</u>, the challenged juror <u>never</u> expressed any prejudice

against Robinson, nor did she state that she could <u>not</u> be fair and impartial. Her

responses were more akin to the negative responses of three jurors in <u>Virgil</u> when they

were asked whether a witness with a prior criminal conviction was "worthy of belief."

<u>Virgil</u>, 446 F.3d at 608. In finding that the three jurors were not biased, the court

reasoned:

> [T]he Supreme Court has never required that jurors come ready to serve
> with a blank slate, without preconception or understanding of the real
> world. As the Supreme Court noted in <u>Irvin v. Dowd</u>,
> > To hold that the mere existence of any preconceived notion
> > as to guilt or innocence of an accused, without more, is
> > sufficient to rebut the presumption of a prospective juror's
> > impartiality would be to establish an impossible standard.

<u>Virgil</u>, 446 F.3d at 609 (quoting <u>Irvin v. Dowd</u>, 366 U.S. 717, 723 (1961)); <u>see also id.</u>

at n.48 (quoting <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 681 (1986)) ("'[T]he

Constitution entitles a criminal defendant to a fair trial, not a perfect one.'").

On this record, as in <u>White</u>, the decision of the state court to permit this juror to continue to serve on the panel did not adversely affect Robinson's fair trial rights and was not an unreasonable application of federal constitutional law.  Robinson is not entitled to federal habeas corpus relief as to this claim.

## **<u>RECOMMENDATION</u>**

For the foregoing reasons, it is **RECOMMENDED** that the petition of Jamaha Robinson for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v.</u>

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[46]

New Orleans, Louisiana, this ___7th___ day of September, 2012.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[46]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.